UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

NOV 0 9 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-01-GWU

MAE HURT,                                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Hurt

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hurt

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Hurt

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Hurt

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mae Hurt, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cervical degenerative disc disease at C5-7, cervical spinal stenosis, lumbago, lumbar degenerative disc disease, radiculopathy, and being status post bilateral mastectomy, status post arthroscopic knee surgery, and status post vocal cord polyp removal. (Tr. 20). Nevertheless, the ALJ determined that the plaintiff retained the residual functional capacity to lift up to 10 pounds occasionally and five pounds frequently, with occasional walking and standing, and proceeded to apply Rule 201.28 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable to a person of her age, education, and work experience, which directs a conclusion of "not disabled." (Tr. 21-4). The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

7

Hurt

Although the plaintiff alleged that she was unable to work because of difficulty standing due to knee problems, difficulty sitting due to lower back problems, and difficulty using her arms as a result of a bilateral mastectomy, no physician ever placed any specific restrictions on her as a result of these or other conditions. Her mastectomies took place in 1989 and 1990 (Tr. 123, 159), and she had reconstructive surgery in May, 1993 (Tr. 180.) While the plaintiff stated that she was unable to continue holding her arms up as a result of the mastectomy, she actually continued her job as a beautician until 1998. (Tr. 87, 431). She underwent diagnostic arthroscopy of the left knee in 1995, and the physician noted chondromalacia and a lateral meniscus tear, but no permanent functional restrictions were given. (Tr. 199). Also, before the alleged onset date, the plaintiff had a total abdominal hysterectomy in 1998, but the only restrictions given by the physician were no driving for 24 hours and no heavy lifting for six weeks. (Tr. 206, 208).

After an arthroscopy of the right knee in October, 2002, the physician, Dr. Williamson, noted chondromalacia of the patella, but that this was not significant enough to perform any chondroplasty. (Tr. 254). Two weeks following the operation, he wrote that the wound had healed well, and the patient was "advised to exercise and resume all activities gradually." (Tr. 276).

Dr. Williamson referred his patient to a neurosurgeon, Dr. Joseph Williams, for evaluation of lower back pain in late 2002. (Tr. 293). His examination showed

8

tenderness in the lumbar area, but that sensation and reflexes were intact, and Dr. Williams gave his patient stretching exercises and ordered an MRI. (Tr. 294-5). Dr. Williams read the MRI as "basically normal," although the radiologist noted a mild thickening at one point with minimal pressure on the adjacent thecal sac. (Tr. 292, 298). In any case, Dr. Williams opined that the plaintiff was not a surgical candidate, and she herself declined injections. (Tr. 292). The doctor advised physical therapy and prescribed medications, but did not list any functional restrictions. (Tr. 292, 418-19).

State agency physicians who reviewed most of the record concluded that the plaintiff could perform medium level exertion with occasional kneeling, crawling and climbing of ladders, ropes, and scaffolds. (Tr. 282-90, 408-16).

Following the review by the state agency physicians, in November, 2003, an MRI of the cervical spine was obtained by Dr. John Gilbert. The MRI showed a small posterior protrusion at C5-6, a small posterior annular tear and C6-7, mild degenerative disc disease, and loss of lordosis. (Tr. 425B). However, no physician suggested any functional restrictions as a result of these cervical conditions.

Therefore, it appears that the ALJ gave the plaintiff the benefit of the doubt in limiting her to sedentary level exertion physically (Tr. 21), particularly since the vast majority of treating sources either did not mention any specific restriction or, in

9

Hurt

the case of Dr. Williams, advised the plaintiff to return to all activities "gradually." Medical reviewers felt the plaintiff was capable of a limited range of medium work.[1]

The plaintiff's primary issue on appeal is that the ALJ did not fully consider statements in the notes of her treating family physician, Dr. George Chaney, who prescribed the medications Darvocet and Xanax. Dr. Chaney added a caution in his notes that "the patient was told the risks of the medication and that no medication can be taken while working, driving or operating machinery." (Tr. 365, 366, 370). The plaintiff argues that the ALJ did not evaluate this statement, admittedly by a treating physician, and that Sixth Circuit precedent requires the ALJ to give good reasons for declining to accept a treating physician's opinion. See Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). However, all of the warnings couched in this language by Dr. Chaney precede the plaintiff's alleged onset date by years. The plaintiff's alleged onset date was June 30, 2002 (Tr. 58), and the most recent office note by Dr. Chaney indicating that she should not work while using Xanax or Darvocet was dated November 9, 1999 (Tr. 365). The plaintiff admittedly worked for at least a short time after 1999 as a certified nurse's aide (Tr. 87) as well as receiving her training and certification as a certified nurse's aide as late as April, 2002 (Tr. 92). She also continued to drive. (Tr. 95, 118). While Dr.

---

[1] The plaintiff does not focus on any non-exertional restrictions cited by the medical reviewers.

Hurt

Chaney continued to prescribe the same medications, he had modified his warning in December 1999 to indicate that the plaintiff was "not to take this medication while driving, operating heavy machinery, etc." (Tr. 364). Subsequently, he merely stated that possible side effects had been discussed with the patient, and that it allowed her to "function better." (E.g., Tr. 342). Dr. Chaney never offered a specific opinion addressed to the plaintiff's functional capacity or her ability to work. Even if Dr. Chaney's statements were interpreted to mean that the plaintiff could not do any work while taking Darvocet and/or Xanax, the plaintiff's own statements and activities showed otherwise. See Warner v. Commissioner of Health and Human Services, 375 F.3d 387, 391 (6th Cir. 2004) (ALJ not required to credit a treating physician opinion that is contradicted by the plaintiff). Consequently, the ALJ's failure to evaluate Dr. Chaney's comments was, at most, harmless error.

The decision will be affirmed.

This the _____9_____ day of November, 2005.


G. WIX UNTHANK
SENIOR JUDGE